# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**UNITED STATES OF AMERICA**

**V.** NO. 4:15-CR-73

**STEVEN HAYNES; CRAIG HAYNES;**
**and TALISA SHIVERS**

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on the United States of America's "Motion to Conduct Trial in Oxford Division." Doc. #196. This Court previously granted the motion in a ruling from the bench, and enters this written opinion and order to memorialize and further explain that ruling.

## I
## Procedural History

### A. Indictments and Continuances

On June 26, 2015, a grand jury returned an indictment charging Defendants Steven and Craig Haynes[1] and five co-defendants, with various crimes, including conspiracy to distribute heroin from January 2014 until June 2015. Doc. #1.

On October 21, 2015, the United States of America ("Government") filed a first superseding indictment which, among other things, added a new co-defendant to the conspiracy charge. Doc. #77. On December 8, 2015, this Court issued a notice setting trial in this matter for February 1, 2016, in Greenville Courtroom 1. Doc. #109. On December 21, 2016, this Court, acting on motion of Defendant Frank Williams, continued trial until March 21, 2016. Doc. #112.

---

[1] To avoid confusion, the Court will refer to Steven Haynes and Craig Haynes by their first names.

On February 24, 2016, the Government filed a second superseding indictment, adding another new defendant, Talisa Shivers, to the conspiracy charge (Count One). Doc. #141. On March 2, 2016, this Court, acting on motions of Steven and Williams, continued trial until April 18, 2016. Doc. #153. Following the second continuance, all defendants but Steven, Craig, and Shivers entered pleas of guilty.

### B. Motion to Conduct Trial in Oxford

On April 11, 2016, the Government filed a "Motion to Conduct Trial in Oxford Division." Doc. #196. In its motion, the Government asks "that the trial in this case be held in the Oxford Division" and represents that "[s]hould moving the trial to Oxford cause a delay in the proceedings, … the ends of justice would be served and outweigh the interest of the defendant[s] and the public in a speedy trial." *Id*. at ¶¶ 6–7. In support of its motion, the Government represents that an Oxford trial is justified because: (1) it anticipates calling at least five incarcerated cooperating witnesses, and due to limited cell space at the Bolivar County Detention Center and the United States Marshal's Service office in Greenville, "it would be difficult, if not impossible, to separate everyone and ensure the safety of the witnesses, officers, court personnel and the public;" and (2) the United States Marshal's Greenville Office has only two Deputy United States Marshals and, "[d]ue to the nature of the charges which involve allegations of heroin trafficking and acts of violence and the number of in custody witnesses, it would be necessary for Deputies from the Oxford office to travel to Greenville daily to provide security for the Court and public." *Id.* at ¶¶ 2–3.

Shivers, Steven, and Craig each filed a response in opposition to the motion, collectively arguing that: (1) the Government failed to file an affidavit in support of its motion; (2) the motion lacks "case law or factual data to substantiate [the] request;" (3) the logistical and

security concerns identified by the Government may be alleviated without moving the trial to Oxford; (4) a trial in Oxford would deprive Shivers, "of the ability to live in her home during the trial;" (5) "[a]ll of the allegations alleged to have happened in the complaint allegedly took place in the Mississippi Delta;" (6) a setting in Oxford would "disenfranchise the right to perform jury duty, if one lives in the Greenville Division;" and (7) an Oxford trial would run afoul of the United States Constitution because "the net effect of moving the trial from Greenville to Oxford would be to significantly change the racial makeup of the jury." Doc. #200; Doc. #201; Doc. #204. In addition to these arguments, Steven's response asks that, in the event trial is held in Oxford, the Court draw a jury pool from the Greenville Division. Doc. #201.

On April 13, 2016, the Government replied in support of its motion, arguing that the security concerns justify a trial setting in Oxford; Shivers lives in Clarksdale, which is closer to Oxford than it is to Greenville; and the racial makeup of a jury is an inappropriate consideration in setting a trial. Doc. #203.

### C. Hearing and Ruling on Motion

The Court convened a hearing on the motion on April 14, 2016. Doc. #199. At the hearing, the parties largely repeated the arguments in their briefs. Additionally, counsel for Shivers raised an argument that the motion is untimely.

At the conclusion of argument, this Court found that an affidavit was not required to establish security concerns and, given the importance of the subject matter of the motion, the motion would be deemed timely.[2] Turning to the merits of the motion, the Court found that security concerns justified trial in Oxford, and that an Oxford trial would not violate the United States Constitution. Specifically, the Court found that an Oxford trial was justified because: (1)

---

[2] The Court also noted that, given the security concerns, the issue of moving trial to Oxford would have been raised sua sponte.

3

the United States Marshal's Service had designated this trial a "high threat" case and informed the Court that it lacked sufficient personnel to cover the trial in Greenville on April 18, 2016; and (2) due to the fact there is only one holding cell in Greenville that has a toilet in it, the Marshal's Service is forced to escort in-custody defendants and witnesses to the bathroom. Accordingly, the Court granted the motion. In doing so, the Court found, and the parties agreed, that the drawing of a district-wide jury would be appropriate for a trial in Oxford in this matter.

Having granted the motion, the Court found proceeding to trial in Oxford on April 18, 2016, would not be prudent due to the potential lack of a sufficient number of persons for the jury venire in Oxford and, therefore, continued the trial until further order of the Court.[3]

## II
## Location of Trial

As a general matter, "[t]here is no basis for inferring the existence of a constitutional right to trial within the *division* where a criminal defendant lives or where a crime was committed." *United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002) (emphasis in original). Thus, contrary to Defendants' argument, there is no right to a trial in a division where crimes were alleged to have been committed. *United States v. James*, 528 F.2d 999, 1021 (5th Cir. 1976). Rather, in the absence of an argument that a trial setting is arbitrary or made for the purpose of obtaining a jury pool of a certain race, the setting of trial within a district is governed by Rule 18 of the Federal Rules of Criminal Procedure.[4] *See id.* at 339–40 (Constitution forbids arbitrary trial setting); *see also United States v. McKinney*, 53 F.3d 664, 673 (5th Cir. 1995) ("An

---

[3] The Court also mentioned that, due to security concerns and the same potential jury venire problems in Greenville, a trial in the month of April in Greenville would not be prudent either, even if the motion had been denied.

[4] As mentioned above, Defendants raised the argument that a trial in Oxford may be unconstitutional because an Oxford jury pool would have fewer African Americans than a Greenville jury pool and because such a setting would "disenfranchise" Greenville Division residents. Because a court may not consider the race of a potential jury pool in setting trial, *McKinney*, 53 F.3d at 673, the first argument is rejected. As for the second argument, Defendants cited no authority, and this Court has been unable to find any, which stands for the proposition that a criminal defendant may enforce another person's right to serve on a jury as a basis for determining a trial setting.

attempt to influence the racial balance of the jury by setting a case in a particular division would not have been appropriate or acceptable ….").  Rule 18, in turn, directs that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.  The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."  "Although the text of Rule 18 refers only to convenience and prompt administration, the district court may consider other factors."  *Lipscomb*, 299 F.3d at 340.  Specifically, in addition to convenience and the prompt administration of justice, a court may consider:  (1) docket management; (2) logistics, including courtroom availability, jail space, and adequacy of security; and (3) pretrial publicity.  *Id.* at 342–44.

### A. Convenience

Rule 18 directs consideration of the convenience of defendants, witnesses, and any victims.  In this regard, neither party has argued convenience as to witnesses[5] or victims.

With regard to convenience of the defendants, Defendants argue that convenience favors the Greenville division because "[a]ll Defendants have family, or themselves, reside in the Mississippi Delta (in the Clarksdale area)."  Doc. #200 at ¶ 4.  However, insofar as Clarksdale is "located approximately 60 miles from Oxford and 70 miles from Greenville,"[6] the convenience of any of the defendants who live in Clarksdale favors trial in Oxford.

---

[5] To the extent Defendants argument about the location of the crimes could be read as impacting the convenience of witnesses, Defendants failed to identify a single witness who would be inconvenienced by a setting in Oxford.

[6] *U.S. v. Roberson*, 124 F. App'x 860, 864 n.6 (5th Cir. 2005); *see also United States v. Judd*, 787 F.Supp. 1052, 1054 (N.D. Miss. 1988) (taking judicial notice of distance between two cities in Mississippi).

### B. Prompt Administration of Justice

Neither Oxford nor Greenville offers an opportunity for an expedited trial when compared to the other.[7] Therefore, the Court deems this factor neutral.

### C. Docket Management

Under the docket management inquiry, a court must ask whether the location of the trial would have no impact on the prompt administration of "other trials on the court's docket." *Lipscomb*, 299 F.3d at 342. The Court has considered its docket and has concluded that the location of the trial would have no such impact. Accordingly, this factor is neutral.

### D. Logistics

The logistics factor considers "whether a particular courthouse meets a particular trial's security requirements or other facilities needs." *Lipscomb*, 299 F.3d at 343.

As this Court explained at the hearing, the Greenville courthouse suffers from a number of security deficiencies which raise serious concerns given this case's "high threat" level, the in-custody defendants (two), and the numerous in-custody co-defendants who are potential witnesses, including fewer United States Marshal's deputies, and limited jail space. In addition to these concerns, the Court notes that the Greenville courthouse lacks a sally port, a deficiency which forces court staff and personnel to share an entrance and corridor with in-custody persons. In contrast, Oxford, the headquarters for the United States Marshals Service in the Northern District of Mississippi, has greater levels of security staffing, more space to hold prisoners, and a sally port.[8] *See United States v. Roberson*, 124 F. App'x 860, 864–65 (5th Cir. 2005) (discussing differences in security between Oxford and Greenville courthouses). Under these

---

[7] As this Court explained at the hearing, a continuance of the April 18, 2016, trial date would have been required even if the trial remained in Greenville.

[8] Courts may take judicial notice of the security issues at courthouses within their district. *See Bishop v. C & P Trucking Co., Inc.*, 840 F.Supp. 118, 119 (N.D. Ala. 1993) (taking judicial notice of security and facilities at courthouses in district). Accordingly, the lack of an affidavit outlining such issues is unnecessary.

circumstances, the Court concludes that the logistics factor weighs heavily in favor of setting trial in Oxford.

### E.  Pre-Trial Publicity

Neither party has argued that pre-trial publicity favors one courthouse or another. Accordingly, this factor is neutral.

### F.  Balancing

Upon consideration, the Court concludes that the convenience and logistics factors weigh in favor of trial at the Oxford courthouse and that the remaining factors are neutral.  Under these circumstances, a trial setting in Oxford is warranted.  *See Roberson*, 124 F. App'x at 864–65 (affirming trial setting in Oxford due security concerns in Greenville where defendant and two potential witnesses were in custody).

## III
## Jury Pool

Under Section XIII of this Court's jury plan, a court may order that a jury be drawn from a district-wide pool if good cause is shown and the court finds that such a pool is "preferred due to notoriety of the offenses or parties involved or for other reasons."  Here, the Court is aware of some media coverage related to this case.[9]  Furthermore, a district-wide pool is justified by the anticipated need for a large venire.  Thus, the Court concludes that good cause exists to draw a district-wide jury venire and that such a pool is preferred due to the notoriety of the offenses or for the other reasons described above.

---

[9] While the Fifth Circuit has held that a court may not take judicial notice of pre-trial publicity for the purpose of moving a trial, it has suggested that judicial notice may be employed for other reasons.  *See Lipscomb*, 299 F.3d at 343–44.

## IV
## Continuance

Having found that a trial in Oxford is justified and that an April 18, 2016, trial is not prudent due to security and jury pool concerns, the Court concludes that this matter must be continued pending its re-setting in Oxford. The Court specifically concludes that the security concerns motivating such continuance compel a finding that the ends of justice served by delay outweigh the best interest of the public and the defendants in a speedy trial. *See* 18 U.S.C. § 3161(h)(7).

Furthermore, due to the fact that Shivers filed a motion to sever on April 13, 2016, which must be decided before trial, *see* Fed. R. Crim. P. 12(d), and the briefing period on the motion will not end until after April 18, 2016, a continuance pending resolution of the motion to sever is also required. The Court further concludes that the necessity of ensuring proper briefing and conclusions on the motion to sever also compel a finding that the ends of justice served by delay outweigh the best interest of the public and the defendants in a speedy trial. *See* 18 U.S.C. § 3161(h)(7); *see also United States v. Reagan*, No. 3:07-cr-98, 2008 WL 2558011, at *1 (E.D. Tenn. June 23, 2008) (ends of justice satisfied by continuance pending resolution of motion to sever).

## V
## Conclusion

For the reasons above, the Government's motion to move trial to Oxford [196] is **GRANTED**. Trial in this case will be set in Oxford and this matter is continued until further order of the Court.

**SO ORDERED**, this 15th day of April, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**